**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| AMERICA OIL AND GAS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. __________ |
| | § | JURY |
| | § | |
| v. | § | |
| | § | |
| SAMUEL EARL WHITLEY, Individually, | § | |
| WHITLEY LLP, | § | |
| GLOBAL GAS GROUP, | § | |
| PONTIS LOGISTICS GMBH, | § | |
| SUNRISE ENERGY KAZAKHSTAN, | § | |
| AMAZE JOSEPHUA, Individually, | § | |
| ASATEX SHANGHAI TRADING CO. LTD., | § | |
| WME SHIPPING & LOGISTICS, LLC, | § | |
| ISLAM AMIR, Individually, | § | |
| ROBERT ADAM, Individually, and | § | |
| SMITH BUSH, Individually, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**1.** Plaintiff America Oil and Gas, LLC ("AO&G") files this Original Complaint against Defendants Samuel Earl Whitley ("Whitley"), Whitley LLP, Global Gas Group, Pontis Logistics GmbH ("Pontis"), Sunrise Energy Kazakhstan ("Sunrise"), Amaze Josephua ("Josephua"), Asatex Shanghai Trading Co. Ltd. ("Asatex"), WME Shipping & Logistics, LLC ("WME"), Islam Amir

("Amir"), Robert Adam ("Adam"), and Smith Bush ("Bush") (collectively, "Defendants"), and would respectfully show the Court as follows:

## I. NATURE OF THE ACTION

**2.** This is a petroleum-storage fraud case. Defendants induced Plaintiff to wire $225,000 into a Texas lawyer's IOLTA account as the price of five days of Houston tank storage that was supposed to allow injection of 50,000 metric tons of EN590 diesel. No product was injected. No SGS report was issued. The tanks were never made available. The lawyer then wired the money, less his fee, to a Chinese company that does not appear in any contract Plaintiff signed.

**3.** After the money was gone, Defendants demanded another $180,000 for an "ISPS code" that is not in the Irrevocable Corporate Purchase Order, the Commercial Invoice, or the tank documents, and that the Port of Houston Authority does not invoice to a commodity buyer. Two Defendants offered to "contribute" $50,000 each if Plaintiff would pay the remaining $80,000 first. Neither contribution was made. No Port Authority validation was ever produced.

**4.** The pattern matches a known commodity fraud called storage spoofing: a seller mandate rejects a real terminal, introduces a storage company that cannot be verified at the named port, routes the "storage" fee through a lawyer or escrow so the payment looks safe, then invents a port, security, or injection fee once the first payment has cleared. Plaintiff seeks return of the $225,000, consequential lost-profit damages, treble damages under RICO, and exemplary damages under Texas law.

## II. PARTIES

**5.** Plaintiff America Oil and Gas, LLC is a Texas limited liability company with its principal place of business at 2600 S. Gessner Road, Suite 420, Houston, Texas 77063.

**6.** The $225,000 wired for the tank-storage fees was advanced for AO&G by a non-lawyer former business partner of undersigned counsel. The advance was made solely so AO&G could pay the storage invoices Defendants directed to the Whitley LLP IOLTA account. AO&G was the contracting buyer, the party for whose account the wires were sent, and the real party in interest. Undersigned counsel is not a plaintiff.

**7.** Defendant Samuel Earl Whitley is an individual residing in Texas, Texas Bar No. 24033331, licensed November 2, 2001, and eligible to practice in Texas. He may be served at 24285 Katy Freeway, Suite 300, Katy, Texas 77494, or wherever he may be found.

**8.** Defendant Whitley LLP is a Texas limited liability partnership with its principal place of business at 24285 Katy Freeway, Suite 300, Katy, Texas 77494. It may be served through its registered agent, Samuel Earl Whitley, at that address, or wherever it may be found.

**9.** Defendant Global Gas Group is a foreign entity that held itself out as organized under the laws of Kazakhstan, with a stated place of business at Kenesary Street 8, 17th Level, Nur-Sultan (Astana), Kazakhstan 010000, and email amir@globalgas.group and info@globalgas.kz. It may be served under the Hague Service Convention through the Central Authority of Kazakhstan, or wherever it may be found.

**10.** Defendant Pontis Logistics GmbH is a foreign entity that held itself out as organized under the laws of Germany and as operating tank storage in Houston and Rotterdam. It used storage@pontislogisticgmbh.com, rotterdam@pontislogisticgmbh.com, WhatsApp +1 (832) 220-2319, and Telegram +31 (635) 250-385. It may be served under the Hague Service Convention through the Central Authority of Germany, through its representative Robert Adam, or wherever it may be found. Upon information and belief, Pontis has been publicly identified in storage-spoofing warnings as a non-operating or low-trust tank-storage name.

**11.** Defendant Sunrise Energy Kazakhstan is a foreign entity that held itself out as organized under the laws of Kazakhstan and used export@sunrisenergy.kz. It may be served under the Hague Service Convention through the Central Authority of Kazakhstan, or wherever it may be found.

**12.** Defendant Amaze Josephua is an individual who held himself out as a representative of Sunrise and used azeeaman53@gmail.com. He may be served under the Hague Service Convention if his address is in a Convention state, or wherever he may be found.

**13.** Defendant Asatex Shanghai Trading Co. Ltd. is a foreign entity that Whitley described as a Chinese company and the recipient of Plaintiff's funds. It may be served under the Hague Service Convention through the Central Authority of the People's Republic of China, or wherever it may be found.

**14.** Defendant WME Shipping & Logistics, LLC is an entity that held itself out as the seller's Houston storage provider, Tank P2C, at coordinates 29°44'03.5"N 95°05'42.0"W, email houston@wme-logistic.com and info@wme-logistic.com, telephone +1 (501) 333-5983. Its published address is 211 Baker Road, Unit 340, Barker, Texas 77413. Federal motor-carrier records list WME Shipping Logistics LLC, USDOT 3125203, at that address, with one truck and one driver. The Texas Secretary of State record, file number 0802978560, lists the entity as in existence. Its registered office is 211 Baker Road, Unit 340, Barker, Texas 77413-6016. Its registered agent is Veronica D. Do, at 211 Barker Road, No. 340, Barker, Texas 77413. It may be served on that agent at either address, or wherever it may be found.

**15.** Defendant Islam Amir is an individual who held himself out as Sales Director of Global Gas Group. He may be served under the Hague Service Convention through the Central Authority of Kazakhstan, or wherever he may be found.

**16.** Defendant Robert Adam is an individual who held himself out as the representative of Pontis and used WhatsApp +1 (832) 220-2319 and Telegram +31 (635) 250-385. He may be served at those contact points if the Court authorizes alternative service, personally if found in Texas, under the Hague Service Convention if his address abroad is known, or wherever he may be found.

**17.** Defendant Smith Bush is an individual who signed the November 21, 2024 Tank-to-Tank Injection Agreement as Logistics Director of WME. He may be served at 211 Baker Road, Unit 340, Barker, Texas 77413, through houston@wme-logistic.com if the Court authorizes alternative service, or wherever he may be found.

## III. JURISDICTION AND VENUE

**18.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff assert a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. The Court has supplemental jurisdiction over the Texas-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative fact as the RICO claim.

**19.** Plaintiff do not rely on diversity jurisdiction. Plaintiff and Defendants Whitley, Whitley LLP, and, upon information and belief, WME are citizens of Texas, so complete diversity under 28 U.S.C. § 1332 does not exist. Federal-question jurisdiction is the basis for this filing.

**20.** The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks return of $225,000 and consequential damages measured by the lost resale of the EN590 that Defendants' conduct prevented them from taking.

**21.** This Court has personal jurisdiction over each Defendant. Whitley, Whitley LLP, and WME are Texas citizens or operate at a Texas address and may be served in Texas. Each foreign Defendant purposefully directed communications, invoices, endorsements, and payment instructions into Texas, caused wires to be sent from and to Texas, and aimed the alleged fraud at

a Texas company and a Texas resident. Those contacts satisfy the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and due process.

**22.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Houston: the ICPO called for FOB Houston, the wires were initiated here, the Port of Houston was the supposed terminal, and the IOLTA account that received the money is in Katy, Texas. Venue is also proper for the RICO claim under 18 U.S.C. § 1965(a) and (b).

## IV. FACTUAL ALLEGATIONS

### A. The purchase documents did not require a storage-extension fee or an ISPS code

**23.** In October 2024, AO&G, through its CEO America A. Avila, sought to buy petroleum product for delivery FOB Houston. On October 22, 2024, AO&G issued an Irrevocable Corporate Purchase Order to Islam Amir, Sales Director of Global Gas Group, for 2,000,000 barrels of Jet Fuel A1, non-Russian origin, FOB Port of Houston, payment by SWIFT MT103, inspection by SGS or equivalent, at $78 per barrel. The ICPO does not mention an ISPS code, a port-security fee, a tank-extension fee, or payment to a lawyer's trust account.

**24.** The product was then changed to EN590 diesel, 10 ppm. On October 30, 2024, Global Gas Group issued Commercial Invoice GGG/AOG/5844HOU/EN590 for 50,000 metric tons trial, followed by 50,000 metric tons per month for 12 months with rolls and extensions, FOB Houston Port, at $480 per metric ton, total trial value $24,000,000. The invoice procedure required the buyer to sign and return the invoice with a tank-storage agreement, after which the seller was to provide partial proof of product and a tank-to-tank injection agreement. The invoice does not impose an ISPS-code fee on the buyer and does not authorize payment of storage fees to a party other than the terminal.

**25.** AO&G had a resale for the trial quantity. On November 13, 2024, AO&G invoiced Horizon Group International LLC, San Antonio, Texas, for 50,000 metric tons of EN590 at $560 per metric ton, a $28,000,000 trial invoice, with monthly follow-on volume. The spread between the $480 purchase price and the $560 resale price is $80 per metric ton.

**B. A real terminal was rejected, and Pontis was introduced**

**26.** On November 8, 2024, AO&G signed a tank-storage agreement with Terminal Transfer & Storage Co. Inc. of Mobile, Alabama, for 50,000 metric tons, and sent it to Global Gas Group. On November 16, 2024, Acosta gave Amir the terminal contact, Tom Pugh, terminals@energypipe.net, (251) 427-5892. Global Gas Group rejected that terminal.

**27.** Defendants then introduced Pontis, through Robert Adam, as the storage provider. On November 19, 2024, Acosta emailed Adam a letter of intent for Jet A1, EN590, and D6 storage at Houston terminals. Adam replied the same day that the tank-storage agreements were attached. On WhatsApp, Adam asked who the seller was. Acosta answered Global Gas. Adam then asked whether the agreements had been signed.

**C. The first wire: $95,000 for two days**

**28.** On November 21, 2024, Acosta told Adam that partial proof of product had arrived and asked how quickly Pontis could endorse. Adam said endorsement would follow a tank-storage receipt and told Acosta to request a payment invoice. Adam sent a two-day invoice and, at 4:46 p.m., wrote that the invoice also contained a TRC20 cryptocurrency wallet "for faster payment and easy confirmation."

**29.** On November 22, 2024, Acosta was at the bank making the payment. He sent Adam the outgoing-wire receipt. The wire was a domestic wire to Whitley's Wells Fargo IOLTA account.

Acosta gave the reference TRN 3380524327Es and told Adam the attorney should be able to see the credit. The amount of this first storage payment was $95,000, for two days.

**30.** Pontis thereafter sent endorsed documents and a temporary registration for those two days. No product was injected.

**D. The second wire: $130,000 for three more days**

**31.** On or about November 28, 2024, Global Gas Group told Plaintiff that the Port Authority required three additional days of storage because of a logistical issue. That condition is not in the ICPO or the Commercial Invoice. Pontis issued an invoice for the additional three days in the amount of $130,000 and again directed payment to Whitley's IOLTA account.

**32.** On or about November 29, 2024, with a credit posting on or about December 2, 2024, Plaintiff wired the additional $130,000 to the same IOLTA account. Proof of payment was sent to Adam and to Global Gas Group. Global Gas Group acknowledged the payments and said they would be used to obtain terminal endorsement and POP and SGS documents. No product was injected. No POP or SGS report was delivered.

**33.** The two wires total $225,000. Both were made from Texas. Both were received in a Texas IOLTA account. Both were induced by interstate and foreign email and WhatsApp messages.

**E. The ISPS-code demand**

**34.** On or about December 9, 2024, after both storage wires had cleared, Pontis through Adam demanded $180,000 to "secure the ISPS code" for the tank farm. Adam said the fee was not part of ordinary POP and SGS issuance and had been requested by the seller. The ICPO, the Commercial Invoice, and the storage documents do not require the buyer to buy an ISPS code.

**35.** ISPS is the International Ship and Port Facility Security regime under the Maritime Transportation Security Act and 33 C.F.R. Parts 101-106. It is a vessel and facility security

program. Port Houston's public tariff addresses ISPS only as a source of delay charges assessed under the tariff against vessels and users of Port Authority premises. It does not sell an "ISPS code" to a commodity buyer for $180,000. On Acosta's inquiry, Port Houston personnel stated that the Port Authority does not validate ISPS fees of this kind.

**36.** To induce the additional payment, Adam said Pontis would contribute $50,000, and Amir said Global Gas Group would contribute $50,000, leaving Plaintiff to pay $80,000. Adam said he was "only investing because you gave me your word." Neither contribution was made. On December 12, 2024, Acosta relayed the proposal to Avila. Adam pressed for payment first.

**37.** On December 13, 2024, Acosta emailed Adam, copying Avila, Global Gas Group, Whitley, and Port Houston addresses, and asked for an invoice and for validation that the Port Authority had requested $180,000, including the name, title, and contact of the Port agent and a breakdown of the fee. No validation was provided. Adam accused Plaintiff of damaging Pontis by questioning the fee and insisted on payment first.

**F. Whitley admits the money left the trust account**

**38.** On December 13, 2024, Acosta demanded that Whitley return the storage funds. On December 13, 2024, Whitley replied that his firm does not represent Pontis and has never represented Pontis. He wrote that the firm represents Sunrise Energy Kazakhstan as paymaster for oil-sale payments; that Sunrise notified him of the payments; and that the payments, minus escrow fees, were sent to Asatex Shanghai Trading Co. Ltd. on November 25, 2024, and December 2, 2024, on instructions from Amaze Josephua, whom Whitley described as Sunrise's representative. Whitley wrote that Josephua told him Asatex was a Chinese subsidiary of Sunrise with a billing account at the storage company. Whitley wrote that the Pontis invoice was the first he had seen and that he was unaware of any conditions on the transmittal.

**39.** Asatex, Josephua, and Sunrise do not appear in the ICPO, the Global Gas Commercial Invoice, or the Pontis storage documents under which Plaintiff were told to pay. Plaintiff did not authorize a transfer to Asatex.

**40.** On December 16, 2024, Acosta demanded return of the full amount by the next business day's wire cutoff. He stated that he had visited the Port Authority and could not confirm Adam's ISPS representations, that Whitley had no authority to release the funds, and that Asatex, Josephua, and Sunrise were strangers to the Pontis contract.

**41.** On December 18, 2024, Whitley replied that he had spoken with Sunrise, copied at export@sunrisenergy.kz, and that Sunrise would contact Plaintiff. He repeated that the firm had not agreed to hold the funds in escrow for AO&G, that it learned the Pontis invoice terms only on December 13, and that it had complied with Sunrise's instruction to send the money to Asatex. He declined to return the funds.

**42.** On or about December 26, 2024, Josephua emailed Plaintiff a promise to refund $225,000, apparently net of fees. No refund has been paid.

**<u>G. WME and Bush supplied the injection paperwork</u>**

**43.** On November 21, 2024, Global Gas Group issued Tank-to-Tank Injection Agreement TTIA-EN590HOUUSA-02985/24, effective November 21 and terminating November 28, 2024, for injection of 50,000 metric tons of Kazakhstan EN590. The agreement names WME Shipping & Logistics, LLC as the seller's storage provider, Tank P2C, Houston, coordinates 29°44'03.5"N 95°05'42.0"W, represented by Smith Bush, Logistics Director, houston@wme-logistic.com, +1 (501) 333-5983. Bush's signature and a WME seal appear on the document. No injection occurred during the stated term or after the $225,000 was paid.

**44.** WME's public website claims tank-farm operations at Rotterdam and other terminals and lists the Barker, Texas mailbox address. Federal carrier data for the same name and address show a one-truck, one-driver motor carrier, not a Houston terminal operator. Upon information and belief, WME did not own or control Tank P2C and Bush's endorsement was used to make the injection agreement look genuine.

**H. The enterprise and the pattern**

**45.** Defendants operated as an association-in-fact enterprise. Global Gas Group and Amir supplied the seller invoice and the product story. Pontis and Adam supplied the storage invoices, the crypto-wallet alternative, and the ISPS demand. WME and Bush supplied the injection endorsement. Sunrise, Josephua, and Asatex supplied the offshore destination for the money. Whitley and Whitley LLP supplied the Texas IOLTA account that made the payment look like a lawyer-controlled escrow. Each participant's role was necessary to the result: Plaintiff would not have wired $225,000 to a Kazakh or Chinese account on these documents, and did wire it because a Texas lawyer's trust account was the payee.

**46.** The pattern is closed-ended and repeated: the October 22 ICPO, the October 30 invoice, the November 19-22 storage solicitation and first wire, the November 28-December 2 extension solicitation and second wire, the December 9-13 ISPS demand, and the December 13-18 refusal to return funds after an admitted transfer to China. The acts are related by purpose, method, and participants. The enterprise held itself out as available for monthly lifts for twelve months, which is a threat of repetition.

**47.** Upon information and belief, the transaction matches storage spoofing as described by the Port of Rotterdam Authority and the Dutch tank-storage association: sale of storage or inventory that the named terminal cannot confirm, rejection of a verifiable terminal, upfront fees for

endorsement or access, and a lawyer or escrow inserted to speed payment. Pontis has been named in public storage-spoofing warnings. Plaintiff pleads those reports as notice and pattern evidence, not as adjudicated findings.

## V. CAUSES OF ACTION

**Count 1 — RICO, 18 U.S.C. § 1962(c), against all Defendants**

**48.** Plaintiff incorporates paragraphs 1 through 47.

**49.** Defendants are persons employed by or associated with an enterprise engaged in, or the activities of which affect, interstate and foreign commerce. The enterprise is the association in fact described in paragraph 45. Each Defendant conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

**50.** The pattern includes the following predicate acts, pleaded with particularity:

**51.** Wire fraud, 18 U.S.C. § 1343. (a) On November 19-21, 2024, Adam, by email and WhatsApp into Texas, represented that Pontis could provide Houston tank storage and endorsement and transmitted a two-day invoice payable to the IOLTA account, inducing the $95,000 wire on November 22, 2024. (b) On or about November 28, 2024, Global Gas Group and Pontis, by email, represented that the Port Authority required three more days, inducing the $130,000 wire. (c) On November 21, 2024, Adam transmitted a TRC20 wallet address as a payment alternative, a use of interstate wires in furtherance of the scheme. (d) On December 9-13, 2024, Adam and Amir, by email and WhatsApp, represented that an ISPS code costing $180,000 was required by the Port Authority and that Pontis and Global Gas Group would contribute $50,000 each. (e) On December 13 and 18, 2024, Whitley, by email, confirmed receipt and outbound transfer of the funds while denying any duty to hold them. Each transmission was in interstate or foreign commerce. Each was made in furtherance of a scheme to obtain money by false pretenses.

**52.** Laundering of monetary instruments, 18 U.S.C. §§ 1956 and 1957. The $225,000 was proceeds of the wire fraud. On or about November 25 and December 2, 2024, Whitley, at Josephua's direction and for the enterprise, transferred those proceeds from the Texas IOLTA account to Asatex in China. The transfer was a monetary transaction in criminally derived property greater than $10,000 and was conducted knowing the funds were proceeds of fraud, to conceal the destination and to promote the scheme by paying the offshore participants.

**53.** Attempted interference with commerce by extortion, 18 U.S.C. § 1951. On December 9-13, 2024, Adam and Amir used interstate wires to demand $80,000 of Plaintiff's money, under color of a Port Authority requirement that did not exist, and threatened that the product and the already-paid storage would be lost unless Plaintiff paid. Plaintiff did not pay the $80,000. The attempt is a predicate act.

**54.** Plaintiff were injured in their business and property by the pattern, in the amount of $225,000 paid and the lost resale of the EN590. Plaintiff seeks treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

**<u>Count 2 — RICO conspiracy, 18 U.S.C. § 1962(d), against all Defendants</u>**

**55.** Plaintiff incorporates paragraphs 1 through 54. Each Defendant agreed that the enterprise would be conducted through the pattern alleged above. Whitley agreed to receive and forward the wires. Josephua agreed to direct the funds to Asatex. Adam, Amir, Bush, and the entity Defendants agreed to supply the documents and demands that caused the wires. Plaintiff seeks relief under 18 U.S.C. § 1964(c).

**<u>Count 3 — Breach of fiduciary duty, against Whitley and Whitley LLP</u>**

**56.** Plaintiff incorporates paragraphs 1 through 47. Whitley and Whitley LLP received $225,000 into an IOLTA account. Under Texas law, a lawyer who accepts funds into a trust account owes

the persons whose money it is a duty of loyalty, candor, and safekeeping. Texas Disciplinary Rule of Professional Conduct 1.15 supplies the standard of conduct: trust funds are held separate, are not disbursed except to persons entitled, and are accounted for. The Rule is not pleaded as a private cause of action. It is the measure of the duty.

**57.** Whitley disbursed the funds to Asatex, a stranger to Plaintiff's contracts, on the oral or emailed instruction of Josephua, without a written escrow agreement with Plaintiff, without confirming that product had been injected, and without confirming that Asatex was a terminal or a subsidiary entitled to the storage fee. He then refused a demand for return. That conduct breached the fiduciary duty and caused the loss of $225,000 and the consequential damages alleged below.

**Count 4 — Legal malpractice and gross negligence, against Whitley and Whitley LLP**

**58.** Plaintiff incorporates paragraphs 1 through 47. In the alternative, if Whitley contends he was paymaster only for Sunrise and owed Plaintiff no fiduciary duty, he still owed a duty of ordinary care once he accepted their money into a trust account and was told, no later than December 13, 2024, that the money had been paid for Pontis storage that had not been performed. He failed to freeze the funds, failed to investigate the Pontis invoice, and failed to reverse the transfer. The failure was gross negligence because transferring client-ledger funds abroad, without reading the invoice that caused the deposit, involves an extreme degree of risk that the payor will lose the money.

**Count 5 — Fraud and fraudulent inducement, against all Defendants**

**59.** Plaintiff incorporates paragraphs 1 through 47. Defendants represented, by invoice, email, WhatsApp, and signed injection agreement, that Pontis and WME controlled Houston tanks, that five days of paid storage would produce injection and POP/SGS documents, that the Port Authority required the extension and the ISPS fee, and that the IOLTA account would hold the storage fee.

Those representations were false. Defendants knew they were false or made them recklessly. Plaintiff relied on them by wiring $225,000. The reliance was justified by the use of a Texas lawyer's trust account as the payee. The damage is the $225,000 and the lost resale.

**Count 6 — Fraud by nondisclosure, against all Defendants**

**60.** Plaintiff incorporates paragraphs 1 through 47. Defendants concealed that Whitley represented Sunrise rather than the terminal, that the funds would be wired to Asatex, that WME was not the terminal operator of Tank P2C, and that no ISPS code was being purchased from the Port Authority. Defendants had a duty to disclose because they made partial disclosures about escrow, injection, and port requirements, and because Whitley accepted the funds into a trust account.

**Count 7 — Statutory theft, against all Defendants**

**61.** Plaintiff incorporates paragraphs 1 through 47. Defendants unlawfully appropriated the $225,000 without Plaintiff's effective consent, or with consent induced by deception, in violation of Texas Penal Code § 31.03. Plaintiff seeks actual damages, costs, and attorney's fees under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.003 and 134.005.

**Count 8 — Conversion, against all Defendants**

**62.** Plaintiff incorporates paragraphs 1 through 47. Plaintiff owned or had an immediate right to the $225,000. Defendants exercised dominion over it by receiving it, wiring it to Asatex, and refusing return, in a manner inconsistent with Plaintiff's rights.

**Count 9 — Money had and received and unjust enrichment, against all Defendants**

**63.** Plaintiff incorporates paragraphs 1 through 47. Defendants hold or received $225,000 that in equity belongs to Plaintiff. They gave no storage, no injection, and no product. Retention of the money is unjust.

**Count 10 — Civil conspiracy and aiding and abetting, against all Defendants**

**64.** Plaintiff incorporates paragraphs 1 through 47. Defendants had a meeting of the minds to obtain the storage wires and to move them offshore. Each provided substantial assistance: invoices, endorsements, the IOLTA account, the transfer instruction, or the refusal to return. Under Texas law they are jointly and severally liable for the resulting fraud and theft.

**Count 11 — Negligent misrepresentation, against all Defendants**

**65.** Plaintiff incorporates paragraphs 1 through 47. In the alternative, Defendants supplied false information about terminal control, port requirements, and escrow conditions, in the course of a transaction in which they had a pecuniary interest, without reasonable care. Plaintiff justifiably relied and suffered pecuniary loss.

## VI. DAMAGES

**66.** Actual damages. Plaintiff seeks $225,000, the sum of the November 22, 2024 wire of $95,000 and the late-November wire of $130,000, which was credited on or about December 2, 2024. Both wires were paid for storage and injection that were not provided.

**67.** Consequential damages, trial lift. AO&G's purchase price on the Global Gas invoice was $480 per metric ton. AO&G's November 13, 2024 invoice to Horizon Group International LLC was $560 per metric ton for the same 50,000 metric ton trial quantity. The margin is $80 per metric ton. Fifty thousand metric tons times $80 is $4,000,000. That resale was prevented because no product was injected and no POP or SGS documents were issued.

**68.** Consequential damages, contract quantity. The Global Gas invoice also stated 50,000 metric tons per month for 12 months. At the same $80 margin, that volume is 600,000 metric tons and $48,000,000. Plaintiff pleads this amount as lost profits on the quantity Defendants agreed to supply and AO&G had priced for resale. Plaintiff will prove the Horizon commitment, AO&G's

ability to perform, and the certainty of the profits at trial. If the Court finds the monthly quantity speculative, the trial-lift profit of $4,000,000 remains.

**69.** Combined economic damages, before trebling or exemplary damages, are $225,000 plus $4,000,000, and alternatively plus $48,000,000, for a total of $4,225,000 or $52,225,000.

**70.** RICO trebling. Under 18 U.S.C. § 1964(c), Plaintiff seeks three times the damages proved on the RICO counts. Three times $4,225,000 is $12,675,000. Three times $52,225,000 is $156,675,000.

**71.** Exemplary damages. Defendants acted with fraud, malice, or gross negligence. Plaintiff seeks exemplary damages under Texas Civil Practice and Remedies Code Chapter 41. The cap in section 41.008 does not apply to conduct described in section 41.008(c), including theft under Penal Code § 31.03 and misapplication of fiduciary property under Penal Code § 32.45, to the extent the jury so finds.

**72.** Interest, fees, and costs. Plaintiff seeks pre-judgment interest from the December 2024 loss date, post-judgment interest under 28 U.S.C. § 1961, attorney's fees under 18 U.S.C. § 1964(c) and Texas Civil Practice and Remedies Code § 134.005, and costs.

## VII. CONDITIONS PRECEDENT AND JURY DEMAND

**73.** All conditions precedent have been performed or have occurred.

**74.** Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER

**75.** Plaintiff prays that Defendants be cited to appear and answer, and that Plaintiff has judgment against Defendants, jointly and severally, for: (a) actual damages of $225,000; (b) consequential damages of $4,000,000, and alternatively $52,000,000; (c) treble damages under 18 U.S.C. § 1964(c); (d) exemplary damages; (e) pre-judgment and post-judgment interest; (f) attorney's fees

and costs; (g) an accounting of the IOLTA deposits and the Asatex transfers; and (h) all other relief to which Plaintiff is entitled.

Respectfully submitted,



**/s/ Alex O. Acosta**
Alex O. Acosta
Attorney-in-Charge
State Bar No. 00798021
Southern District of Texas Bar No. __________

ACOSTA LAW, P.C.
13831 Northwest Freeway, Suite 400
Houston, Texas 77040
Telephone: (713) 980-9014
Facsimile: (713) 583-9554
Email: alex@theacostalawfirm.com

Attorney-in-Charge for Plaintiff

**CERTIFICATE OF SERVICE**

**76.** This is an original complaint. Service is not required at filing under Federal Rule of Civil Procedure 5. Plaintiff will serve each Defendant with the summons and complaint under Rule 4.